UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| CHARLES MARSHALL SMITH, <br> Movant, <br> vs. <br> UNITED STATES OF AMERICA, <br> Respondent. | 4:20-CV-04019-KES <br><br> REPORT AND RECOMMENDATION |

## INTRODUCTION

This matter is before the court on the *pro se* motion by Charles Marshall Smith to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255.  See Docket No. 1.[1]  The respondent United States of America ("government") now moves to dismiss Mr. Smith's motion without holding an evidentiary hearing.  See Docket No. 23.  This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, United States District Judge.  For the reasons discussed below, the court recommends granting the government's motion in its entirety.

---

[1] Matters filed in Mr. Smith's civil § 2255 action are cited by docket number. Documents from Mr. Smith's underlying criminal action, United States v. Smith, 4:17-cr-40100 (DSD), are cited by the docket number from the criminal case preceded by "CR."

## FACTS

**A.    Indictment and Pre-Plea Proceedings**

A grand jury indicted Mr. Smith and co-defendant Sherie Roxanne
Mitchell on November 7, 2017, charging Mr. Smith and Ms. Mitchell with
conspiracy to distribute heroin.  See CR Docket No. 1.  Mr. Smith was also
charged with possession with intent to distribute 280 grams or more of cocaine
base.  Id.  Mr. Smith made his initial appearance via a writ from state custody
on November 13, 2017.  See CR Docket Nos. 7 & 10.  The Federal Public
Defender was appointed to represent him and a detention order entered.  See
CR Docket Nos. 13 & 15.

On December 18, 2017, the Federal Public Defender moved to withdraw
from representing Mr. Smith due to a discovered conflict of interest.  See CR
Docket No. 38.  Counsel Kenneth Tschetter was appointed to represent
Mr. Smith.  Thereafter, Mr. Smith privately retained attorneys Bradley
Reynolds and Sanford Schulman to represent him on March 26, 2018.  See CR
Docket Nos. 46 & 48.

On July 13, 2018, Mr. Smith wrote a letter to the court asking the court
to prod Mr. Schulman to work harder for him.  See CR Docket No. 71.  In the
letter, Mr. Smith explained that all three of his lawyers told him he was facing
a sentence of life in prison.  Id. at p. 2.  Mr. Smith said Mr. Schulman told him
he was facing a life sentence even without any enhancements.  Id.  Shortly
after Mr. Smith filed this letter with the court, Mr. Reynolds and Mr. Schulman
moved to withdraw from representing Mr. Smith.  See CR Docket No. 72.  An *ex*

2

*parte* hearing was held and the court granted the motion, appointing attorney D. Sonny Walter to represent Mr. Smith.  <u>See</u> CR Docket Nos. 73 & 74.

Mr. Walter then moved to withdraw just a few days later due to a conflict of interest.  <u>See</u> CR Docket No. 76.  The court granted the motion the same day and appointed counsel Manuel de Castro to represent Mr. Smith on August 29, 2018.  <u>See</u> CR Docket No. 77.

On September 11, 2018, Mr. Smith's co-defendant Sherie Roxanne Mitchell filed a written plea agreement with the court.  <u>See</u> CR Docket No. 78. She agreed to plead guilty to the sole count asserted against her, conspiracy to distribute heroin.  <u>Id.</u> at p. 2, ¶ C.  In her factual basis statement filed in support of her plea agreement, Ms. Mitchell stated she worked together with another co-conspirator in South Dakota to distribute heroin.  <u>See</u> CR Docket No. 79.  Although unnamed in the factual basis statement, it seems a solid inference from the facts alleged that the co-conspirator was Mr. Smith because the two co-defendants were dating and, as explained in further detail below, Mr. Smith lived at Ms. Mitchell's home periodically and drugs and guns belonging to Mr. Smith were found at Ms. Mitchell's home when it was searched.  Ms. Mitchell was sentenced to 60 months' imprisonment, which was the mandatory minimum sentence for the charge in count 1 of the indictment as to her.  <u>See</u> CR Docket No. 108.

**B.    Mr. Smith's Written Plea Agreement**

On November 16, 2018, a written plea agreement and statement of factual basis in support of the plea agreement were filed with the court.  <u>See</u>

3

CR Docket Nos. 92 & 93. Mr. Smith and his counsel signed the documents on November 11, 2018. Id. The documents outline the following agreement.

Mr. Smith agreed to plead to count 2 in the indictment charging possession with intent to distribute cocaine base (aka "crack" cocaine). See CR Docket No. 92 at p. 2, ¶ C. The maximum penalty for this charge was recited in the agreement to be a mandatory minimum sentence of 20 years and up to a maximum of life imprisonment. Id. In return for Mr. Smith's plea of guilty to count 2, the government agreed to dismiss count 1 of the indictment. Id.

In consideration for Mr. Smith's timely plea, the government agreed it would recommend that he receive three points downward adjustment under the United States Sentencing Guidelines ("USSG") for acceptance of responsibility. Id. at pp. 2-3, ¶¶ E & F.

The agreement provided the government would file an information pursuant to 21 U.S.C. § 851[2] to enhance Mr. Smith's sentence because of a prior felony drug conviction. Id. at p. 6, ¶ J. The prior conviction was for manufacturing/delivering a controlled substance and was from April 18, 2002, in Cook County, Illinois Circuit Court, case number 00CR1467001. Id. The effect of the prior conviction on Mr. Smith's maximum and mandatory minimum sentences were already reflected in paragraph C of the plea

---

[2] Under the Controlled Substances Act, if a defendant is convicted of a federal drug offense, his sentence can be enhanced if the government files an information pursuant to 21 U.S.C. § 851 alleging prior conviction(s) for felony drug offenses. See 21 U.S.C. §§ 841(b)(1)(A), 802(44), & 851. The enhancement increases with each additional prior felony drug offense alleged in the information up to a maximum of mandatory life in prison. Id.

4

agreement.  Id.  The plea agreement required Mr. Smith to admit he had this previous conviction and to agree not to challenge the prior conviction as a basis for enhancing his sentence.  Id.  In return, the government agreed not to file an amended § 851 information including assertions of other felony drug convictions that could also be used to enhance Mr. Smith's sentence.[3]  Id.

The plea agreement contained a waiver of Mr. Smith's right to appeal.  Id. at p. 7, ¶ O.  The only exceptions to this appeal waiver were that Mr. Smith could appeal jurisdictional issues and was allowed to appeal any upward departure or variance imposed by the court at sentencing.  Id.  All other potential appeal issues were waived by Mr. Smith.  Id.

The statement of factual basis filed in support of the plea agreement alleged that, on September 5, 2017, police executed a search warrant on Mr. Smith's home in Sioux Falls, South Dakota, and discovered 327.9 grams of crack cocaine.  See CR Docket No. 93 at p. 1.  Mr. Smith stated he knowingly possessed this controlled substance and that he intended to distribute some or all of the drug to others in South Dakota.  Id.

The § 851 information referenced in paragraph J of the plea agreement was filed with the court on November 27, 2018.  See CR Docket No. 97.  It referenced the same Illinois conviction from April 18, 2002, as was referenced

---

[3] As noted, *infra*, Mr. Smith had 5 prior felony drug distribution convictions and 2 prior felony drug possession convictions.  The government could have asserted all of these in a § 851 information to trigger a mandatory penalty of life in prison.

in the plea agreement.  <u>Compare</u> CR Docket No. 97, <u>with</u> CR Docket No. 92 at p. 6, ¶ J.

**C.    The Change of Plea Hearing**

The change of plea hearing took place on November 27, 2018.  <u>See</u> CR Docket No. 132.  At the beginning of the hearing, Mr. Smith was placed under oath.  <u>Id.</u> at p. 2.  All the following testimony from him was given under oath.

Mr. Smith testified he knew he was under oath and must tell the truth. <u>Id.</u>  He stated he understood that, if he gave false information, the government could charge him with perjury or making a false statement.  <u>Id.</u>

Mr. Smith told the court he was then 36 years old and had completed the 11th grade and obtained his General Equivalency Diploma.  <u>Id.</u> at p. 3. Mr. Smith told the court he had not been treated recently for any mental illness or addiction to drugs or alcohol and that he had not taken any alcohol or drugs in the last 24 hours except his medication for high blood pressure.  <u>Id.</u>  He told the court his blood pressure medication did not interfere with his ability to understand the proceedings.  <u>Id.</u> at pp. 3-4.

Mr. Smith acknowledged having received a copy of the indictment and having had an opportunity to discuss it with his counsel.  <u>Id.</u> at p. 4. Mr. Smith testified under oath that he was fully satisfied with Mr. de Castro's advice, counsel and representation in his case.  <u>Id.</u>

Mr. Smith told the court he had read the plea agreement and had an opportunity to discuss it with his counsel.  <u>Id.</u>  He denied that any side promises had been made to entice him to sign the agreement.  <u>Id.</u> at pp. 4-5.

He told the court he understood the terms of his plea agreement.  Id. at p. 5.

Mr. Smith told the court no one had threatened him or attempted to force him

to sign the plea agreement.  Id. at pp. 5-6.  The court specifically warned

Mr. Smith that it might sentence him more severely than he anticipated and

would not, because of that, allow Mr. Smith to withdraw his plea of guilty.  Id.

at p. 5.  Mr. Smith stated he understood that.  Id.  Mr. Smith said he was

pleading guilty of his own free will because he believed he was guilty.  Id. at p.

6.

      The court advised Mr. Smith that count 2, to which he was

contemplating pleading guilty, was a felony.  Id.  If Mr. Smith admitted his

guilt, there were some valuable civil rights he would lose, such as the right to

hold public office, the right to serve on a jury, and the right to use or possess

firearms.  Id.  Mr. Smith stated he understood this.  Id.

      The court advised Mr. Smith the mandatory minimum period of

imprisonment for count 2 was 20 years and the maximum term of

imprisonment was life.  Id.  Mr. Smith stated he understood this.  Id. at

pp. 6-7.  The court further informed Mr. Smith that the first thing the court

would do is look at his advisory sentencing range under the USSG.  Id. at p. 7.

Mr. Smith told the court he and his counsel had discussed what counsel

thought Mr. Smith's USSG range would be.  Id. at pp. 7-8.

      The court specifically told Mr. Smith that the court could not tell him at

that time what his USSG range might be at sentencing.  Id. at p. 8.  The court

said Mr. Smith's presentence investigative report ("PSR") would have to be

written first and the court would then have to resolve any objections to the PSR before finalizing what Mr. Smith's sentencing range would be.  Id.  Mr. Smith indicated he understood.  Id.  The court specifically told Mr. Smith that the final USSG range might be different from the range he was anticipating now. Id.  Mr. Smith told the court under oath that he understood this.  Id.

The court then told Mr. Smith that it had the power to impose a sentence that was either more than or less than the USSG range.  Id.  Mr. Smith stated he understood this.  Id.

The court informed Mr. Smith that, under the terms of the plea agreement, he had waived or given up his right to appeal all issues except the issue of whether the court had jurisdiction or the issue of an upward departure or variance at sentencing.  Id. at p. 9.  Mr. Smith stated he understood this. Id.  The court told Mr. Smith that, even though he had given up the right to appeal, the government could still appeal.  Id.  Mr. Smith stated he understood.  Id.

The court told Mr. Smith he could continue on with his not guilty plea and have a jury trial to determine his guilt or innocence.  Id. at p. 9.  If he opted to have a trial, the court informed Mr. Smith she would tell the jury he was presumed innocent and it was the government's burden to prove his guilt beyond a reasonable doubt.  Id. at p. 10.  The court told Mr. Smith he had the right to be represented by a lawyer at trial and at all other times during his case and that one would be appointed for him if he could not afford to hire a lawyer.  Id.  The court told Mr. Smith that, at trial, he would have the right to

8

see and hear all the witnesses who testified and he could have them cross-examined on his behalf.  Id.

The court told Mr. Smith he would have the right not to testify at trial unless he voluntarily gave up that right.  Id.  The court told Mr. Smith he could avail himself of the court's subpoena power so that any witnesses he wanted to call would come to the trial.  Id.  The court informed Mr. Smith that, if he elected not to put on any evidence or not to testify, the court would tell the jury they could not use those facts against him and the burden was on the government to prove guilt beyond a reasonable doubt.  Id.

The court told Mr. Smith that, if he entered a plea of guilty, there would not be a trial and he would be giving up all the rights the court just told him about.  Id.  Mr. Smith indicated he understood.  Id. at p. 11.

The court explained that, at a trial, the government would have to prove all the essential elements of the crime.  Id.  That is, the government would have to prove that on or about September 5, 2017, in the District of South Dakota, Mr. Smith possessed 280 grams or more of a mixture or substance containing cocaine base, that Mr. Smith was knowingly and intentionally in possession of that mixture or substance, and that he intended to distribute some or all of that cocaine base to another person.  Id.  Mr. Smith stated he understood that was what he was charged with and that was what the government would have to prove if he went to trial.  Id.

The court then asked if Mr. Smith had read the factual basis statement and whether he agreed that statement told the truth about what happened in

9

his case.  Id.  Mr. Smith responded that he was "a little bit confused."  Id.

When the court inquired what Mr. Smith was confused about, he explained he

had been arrested for driving under the influence on September 4, so he was in

jail on September 5, 2017.  Id. at p. 12.  Also, Mr. Smith stated he did not have

a house.  Id.  The court then ascertained by further colloquy with Mr. Smith

that he periodically lived with his girlfriend at her house at the time, that he

understood his girlfriend's house was searched pursuant to a search warrant

and the cocaine base was discovered, and he affirmed that the cocaine base

discovered was his and that he intended to distribute it.  Id. at pp. 12-14.

The court explained Mr. Smith did not have to be at the house at the

time the search was conducted and the cocaine base discovered.  Id. at p. 14.

Mr. Smith stated, "[o]kay.  That was my misunderstanding.  Yes."  Id.

The court went on, "[s]o then whatever place they searched was a place

you were staying periodically."  Id.  Mr. Smith stated "[o]kay."  Id.

The court continued, "[a]nd they found 327.9 grams of crack cocaine

there.  And then you're saying that was your crack cocaine, and you planned

on selling it to others.  Is that true?"  Id.  Mr. Smith responded, "[y]es.  Okay.

I'm sorry about that."  Id.  The court replied, "[t]hat's okay.  I'm just trying to

make sure I understand it."  Id.  With that additional information, the court

found the factual basis sufficed to support Mr. Smith's plea.  Id. at p. 15.

An in camera discussion was held regarding Mr. Smith's cooperation

with the government.  Id. at p. 15.  Counsel explained that Mr. Smith debriefed

with the government, but the government was not agreeing to ask for a reduced

sentence on his behalf because it did not feel the information Mr. Smith provided was fruitful. Id. Nevertheless, defense counsel wanted the court to know this information would be presented at sentencing as mitigation evidence on Mr. Smith's behalf. Id. at pp. 15-16.

The court inquired whether Mr. Smith's advisory USSG range might be more than 240 months' imprisonment because, the court stressed, without a government motion the court could not sentence Mr. Smith to less than the mandatory minimum of 240 months. Id. at p. 16. Counsel for Mr. Smith stated Mr. Smith's USSG range may be more than 240 months. Id. So, the court clarified, the information about Mr. Smith's debrief would be presented to reduce the USSG range, but not below 240 months. Id. Defense counsel agreed with that summary. Id.

The court asked Mr. Smith directly whether he understood that the court would not be allowed to sentence him to less than 240 months and that whatever mitigation evidence was presented regarding his cooperation with the government, it would only serve to reduce his USSG range, but that range would not be reduced below 240 months. Id. Mr. Smith stated he understood this. Id. at p. 17.

After this entire colloquy, the court asked Mr. Smith what his plea was as to count 2 of the indictment charging him with possession with intent to distribute a controlled substance. Id. Mr. Smith replied, "[g]uilty." The court then made the following findings:

> It is the finding of the court in the case of United States vs. Charles
> Marshall Smith that the defendant is fully competent and capable

> of entering an informed plea, that he is aware of the nature of the charges and the consequences of the plea, and that the plea is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense.

Id. at pp. 17-18.  The court then accepted Mr. Smith's plea and adjudged him guilty of count 2.  Id. at p. 18.

The court then turned its attention to the § 851 information filed by the government.  Id.  The court explained that it was going to ask Mr. Smith if he agreed that he had this prior conviction.  Id.  If Mr. Smith admitted the prior conviction, the court explained he would not later be allowed to contest it.  Id.  The court further explained that, if Mr. Smith denied the prior conviction, the court would hold a hearing at a later date to take evidence on whether Mr. Smith had this prior conviction.  Id.  Mr. Smith told the court under oath that he understood this.  Id.

The court then asked Mr. Smith if he admitted he had an April 18, 2002, conviction from Cook County, Illinois, for manufacturing/delivering a controlled substance in case number 00CR1467001.  Id.  Mr. Smith admitted that he had this prior conviction.  Id.

**D.    The PSR and Presentencing Motions**

**1.    The PSR**

The final PSR was filed with the court on March 18, 2019.  See CR Docket No. 118.  The PSR described a months-long multi-source investigation of Mr. Smith and his co-defendant, including information from two sources involved in the conspiracy who identified Mr. Smith and Ms. Mitchell as the source of various drugs.  Id. at pp. 4-5, ¶¶ 6-14.  Examination of the cell phone

12

belonging to one of these sources revealed multiple text messages from the source to Mr. Smith negotiating heroin purchases.  Id.  In addition, a citizen uninvolved in the conspiracy told police they observed frequent traffic at Ms. Mitchell's home, where defendant was also a frequent resident, which traffic was consistent with drug transactions.  Id.

Mr. Smith was arrested for driving while under the influence on September 4, 2017, and his vehicle was towed and inventoried, unveiling 354.37 grams of cocaine in the trunk of the vehicle.  Id. at p. 5, ¶ 12.  The next day, police obtained a search warrant for Ms. Mitchell's home and discovered 327.9 grams of crack cocaine, 4.4 grams cocaine powder, 73.4 grams heroin, 18.2 grams of suspected ecstasy, a digital scale with cocaine residue, $21,081 in United States currency, four handguns (one with an obliterated serial number), and a shotgun converted to a flare gun.  Id. at ¶ 13.  A small amount of heroin was discovered in Ms. Mitchell's purse.  Id.

Following the search, police interviewed Mr. Smith at the jail and he told them all of the drugs and the guns found in Ms. Mitchell's residence belonged to him.  Id. at ¶ 14.  He further told police he intended to sell the drugs.  Id. Mr. Smith stated Ms. Mitchell had no knowledge of what was occurring.  Id.

When Mr. Smith interviewed for the PSR, he denied to the PSR author that the guns or drugs found at Ms. Mitchell's house were his.  Id. at p. 6, ¶¶ 18-19.  When Mr. Smith was reminded of his statement to police where he claimed ownership of the guns and drugs, Mr. Smith told the PSR author he only made those statements because he wanted to help Ms. Mitchell.  Id.

13

Because of his disavowal, the PSR author recommended that Mr. Smith not be given any downward adjustment for acceptance of responsibility.  Id.

The PSR calculated Mr. Smith's advisory USSG range as follows:

| | |
|---|---|
| Base Offense Level | 30 |
| Increase for Possession of a Dangerous Weapon | +2 |
| Substitute Offense Level for Career Offender Status | 37 |
| Total Offense Level | 37 |

Id. at p. 7.

The PSR attributed 21 criminal history points for many convictions in Mr. Smith's criminal history.  Id. at pp. 7-13, ¶¶ 30-53.  This placed Mr. Smith in criminal history category VI.  Id. at p. 13, ¶ 53.  Mr. Smith's criminal convictions included a felony conviction for manufacture/delivery of a controlled substance for which Mr. Smith was sentenced to four years' imprisonment (04/18/02, 00CR1467001).  Id. at p. 8, ¶ 32.

This sentence ran concurrent to a conviction for a second charge of manufacture/delivery of a controlled substance, for which Mr. Smith was also sentenced at the same time to four years' imprisonment.  Id. at ¶ 33 (04/18/02, 00CR1929501).  Both of these sentences also ran concurrent to a third conviction for manufacture/delivery of a controlled substance, for which Mr. Smith was sentenced to three years' imprisonment.  Id. at ¶ 34 (04/18/02, 01CR1301501).

Another conviction for manufacture/delivery of a controlled substance occurred in 2003 for which Mr. Smith was sentenced in 2004 to three years'

imprisonment. Id. at p. 9, ¶ 35 (12/10/04, 03CR2607101). This was followed by a conviction for possession of a controlled substance, on which Mr. Smith was sentenced to 18 months' imprisonment. Id. at p. 10, ¶ 38 (12/18/07, 06CR2095701). This sentence ran concurrently with another felony drug conviction for possession of a controlled substance, for which Mr. Smith was also sentenced to 18 months' imprisonment. Id. at ¶ 39 (12/18/07, 06CR2095601).

Mr. Smith was again convicted in 2009 of a felony count of possession of a controlled substance for which he was sentenced to six years' imprisonment. Id. at p. 11, ¶ 43 (12/02/09, 09CR0785501). Finally, Mr. Smith had a conviction for possession of cannabis, 10 to 30 grams, for which he was sentenced in 2013 to one year of imprisonment. Id. at p. 12, ¶ 46 (09/12/13, 12CR2270701). All of these convictions took place in state court in Cook County Circuit Court, Chicago, Illinois. Id. at pp. 7-12, ¶¶ 32-47.

Using a total offense level of 37 and a criminal history category of VI, the PSR found a USSG range of 360 months to life imprisonment. Id. at p. 21, ¶ 110.

### 2.    Pre-Sentencing Submissions by Mr. Smith

Counsel asserted numerous objections to the PSR, the sum total of which contradicted nearly all the factual admissions he made at his change of plea hearing. See CR Docket No. 117. In particular, Mr. Smith disavowed ever residing at Ms. Mitchell's house and denied ownership of any of the drugs or

guns found there.  Id. at pp. 1-2.  He accordingly objected to the USSG increase for possession of a firearm as recited in the PSR.  Id. at p. 1, ¶ 5.

Mr. Smith asserted the only drugs he could be held accountable for was the cocaine found in the trunk of his vehicle, for which he asserted the USSG offense level of 20 should be applied.[4]  Id. at ¶¶ 2 & 4.  Because he was admitting to ownership of these drugs, Mr. Smith claimed he was still entitled to credit for acceptance of responsibility and he objected to the PSR's assertion that he should not receive such credit.  Id. at ¶ 3.

Apparently conceding the applicability of the career offender status and its corresponding base offense level of 37, Mr. Smith asserted his total offense level under the USSG should be 34, not 37.  Id. at p. 2, ¶ 7.  Based on a total offense level of 34 and a criminal history category of VI, Mr. Smith asserted his USSG range should be 262 to 327 months' imprisonment.  Id. at ¶ 9.

In support of Mr. Smith, counsel submitted two letters of support for the district court to consider at sentencing.  See CR Docket No. 121.  Mr. Smith's sister wrote a letter attesting to Mr. Smith's good character as a brother and a father to his children.  Id. at p. 1.  Mr. Smith's wife, Chivan Graham, wrote a letter asking the court for leniency on behalf of Mr. Smith.  Id. at pp. 2-3.  She testified to Mr. Smith's good character and that he had led her to be a better person.  Id.

---

[4] The government never charged Mr. Smith for possession of the powder cocaine from the trunk of his vehicle.

**E.    The Sentencing Hearing**

Mr. Smith's sentencing hearing was held on March 25, 2019.  See CR

Docket No. 130.  The court asked whether counsel and Mr. Smith had had an

opportunity to review the PSR together.  Id. at p. 2.  Counsel reported they had

done so "on a couple of occasions."  Id.  The court indicated it would then take

up Mr. Smith's objections.  Id.

Counsel indicated, after consultation with government counsel, that

Mr. Smith would withdraw all his objections with the exception that he

maintained his objection to the withholding of credit for acceptance of

responsibility.  Id.  Counsel indicated Mr. Smith wished to address the court on

the topic of acceptance of responsibility and the court indicated it would hear

from Mr. Smith directly.  Id. at p. 3.

Mr. Smith stated as follows:

I want to say I accept full responsibility for what I did, Your Honor.
I knew from the beginning that I was in the wrong.  That's why in
the beginning I talked with the officers.  On September the 5th, I
made a statement.  I had no intentions of going to trial, Your
Honor.  I did sell drugs.  I did know about the safe and the guns,
Your Honor.  And I think I had hiccups when I was pleading out
about the factual basis, but Mr. Manny explained to me and you
also explained to me.  So I have no objections to the factual basis
at all.  I did sign it, and I do understand it now.

I also did a proffer last summer.  So—which was the truth.  So
when I had my PSI interview, I think I had been—I had been
fighting this case for like a year and a half.  I tried to do some
research.  So it was like a misunderstanding.  I was kind of scared,
and I should have been more cooperative.  And I think that's where
the misunderstanding came in.

So I did really make a mistake during my PSI interview.  I just
simply froze.  I just had a mental lapse.  I think when he asked me
questions I didn't know—I was thinking more points, more time,

17

and I had a mental lapse. It was just based out of fear. So I ask
that you grant me responsibility of acceptance [sic], please.

Id. at pp. 3-4.

The court clarified by asking, "[s]o you're saying today that the safe

that was in Sheri[e] Mitchell's residence you knew that that was there?"

Mr. Smith replied, "[y]eah." Id. at pp. 4-5.

The court continued, "[a]nd you knew that the drugs that were in

there were there?" Id. at p. 5. Mr. Smith stated, "[y]eah." Id. The court

asked, "[r]ight?" Id. Mr. Smith affirmed, "[y]es." Id. And the court

asked Mr. Smith whether he admitted the drugs and firearms in the safe

belonged to him. Id. He agreed that they did. Id.

The court then asked the government if it had any objection to

Mr. Smith receiving acceptance of responsibility based on his statements

in court. Id. The government indicated it had no objection. Id. The

court granted counsel's objection to the PSR and gave Mr. Smith credit

for acceptance of responsibility. Id.

With that objection sustained, the court announced a total offense

level of 34, to which both counsel agreed. Id. at pp. 5-6. The court

announced a USSG range of 262 to 327 months' imprisonment, a

sentencing range both counsel agreed was accurate. Id. at p. 6.

Counsel for Mr. Smith then made comments on his behalf. Id. at

pp. 6-9. Counsel indicated Mr. Smith had been in pretrial custody for 19

months and noted he had had a number of attorneys prior to present

counsel representing him. Id. at p. 6. Counsel indicated that, when

18

previous counsel represented Mr. Smith, Mr. Smith proffered with the government and provided quite a bit of information.  Id. at p. 7. Although the government did not believe the information warranted a motion to reduce Mr. Smith's sentence below the statutory mandatory minimum, counsel asked the court to take that cooperation into account in fashioning Mr. Smith's sentence.  Id.

Counsel stated Mr. Smith had been upbeat and positive throughout their relationship.  Id.  Counsel also stated he understood why a person like Mr. Smith, who had had several different attorneys, and maybe got to reading certain books, might come to mistrust what was happening.  Id.  Counsel stated he understood this when talking to Mr. Smith and he was appreciative the court considered his explanation too.  Id.

Counsel stated Mr. Smith wished to learn a trade so when he emerged from prison he would have some skills to be able to join the workforce.  Id. at p. 8.  Counsel stated Mr. Smith understood he would receive a sentence of imprisonment for an extensive period.  Id.  Counsel ended with a request that Mr. Smith be given credit for the pre-sentence period he had spent in jail.  Id. at p. 9.

Mr. Smith then addressed the court himself.  Id.  He apologized to the families and citizens of South Dakota and Sioux Falls and to Ms. Mitchell.  Id.  He also apologized to his children.  Id. at p. 10. Mr. Smith noted he was 36 years old and just really tired of living the life

he had been living.  Id.  Mr. Smith apologized to his parents, stating they were great, hard-working parents and not involved in drugs at all.  Id. at p. 11.  Finally, Mr. Smith apologized to his wife.  Id. at pp. 12-13.

Mr. Smith acknowledged his lengthy criminal history and apologized for all the families back in Chicago that he hurt as well.  Id. at pp. 13-14.  He stated that, on paper, it looked like he had been in jail all his life, but in reality it was not that way.  Id. at p. 14.  For example, the crime referenced in his § 851 information, he stated it looked like he "did seven years, but I actually had boot camp.  I did five months."  Id.  He went on to say the longest he was imprisoned was for three years from 2009-12.  Id.

Every time he was released from jail, he said his resume looked worse.  Id.  He asked the court to allow him to use his sentence to "accumulate some trades" like "forklifting, or truck driving, or working with machinery," so that when he tried to get a job when he was done serving his sentence, he could have some skills and experience to offer.  Id. at p. 15.

Mr. Smith stated he had a passion, a need to give back.  Id.  He stated he felt he had a story to tell.  Id.  He noted that teens don't listen to their moms, but if they hear advice from an older guy, maybe they would heed the advice.  Id.  He stated he probably would have done better if someone other than his mom could have told him what not to

do.  Id.  Mr. Smith expressed hope he could "be that guy because [he] ha[d] lived on both sides now."  Id. at pp. 15-16.

Mr. Smith ended by asking the court for a chance to redeem himself, stating he now had a lot of ambition and a lot of sense.  Id. at p. 17.  He asked for lenience in his sentence so that he could come home a better father, a better son, and a better husband.  Id.  Mr. Smith's wife then addressed the court at length.  Id. at pp. 17-20.

The court recognized that Mr. Smith was highly intelligent and talented and urged him to apply his assets in a lawful endeavor.  Id. at pp. 21-23.  The court noted that Mr. Smith had four prior drug distribution convictions and was a career offender under the USSG.  Id. at p. 23.  The court also noted that, in addition to his lengthy criminal history, Mr. Smith brought a large quantity of drugs to South Dakota.  Id.  Because of these factors, the court found it inappropriate to depart or vary downward from the USSG in imposing Mr. Smith's sentence.  Id.  The court did, however, believe it was appropriate to sentence Mr. Smith at the very bottom of his USSG range.  Id.  The court therefore imposed a sentence of 262 months' imprisonment.  Id. at pp. 23, 25. See also CR Docket No. 123.

Thereafter, Mr. Smith timely filed a notice of appeal.  See CR Docket No. 126.  On August 30, 2019, the Eighth Circuit dismissed the appeal based on Mr. Smith's waiver of his appeal rights in his plea agreement.  See CR Docket No. 136.  Mr. Smith timely filed the instant § 2255 motion within one year.

**F.    Mr. Smith's Claims in His § 2255 Motion**

In his § 2255 motion, Mr. Smith asserts two umbrella claims of

ineffective assistance of counsel with several subparts, as follows:

<u>**Count One**</u>

--Counsel failed to properly inform him of the relevant circumstances
    and likely consequences of pleading guilty as opposed to
    proceeding to trial;

--Counsel failed to file any substantive pretrial motions;

--Counsel failed to conduct an adequate and independent pretrial
    investigation; and

--Counsel failed to negotiate a favorable plea agreement.

<u>**Count Two**</u>

--Counsel failed to review, discuss and explain the PSR prior to
    sentencing

--Counsel failed to file substantive objections to the PSR; and

--Counsel failed to properly argue objections to the PSR.

<u>See</u> Docket No. 1.

The government now moves to dismiss Mr. Smith's § 2255 motion

without holding an evidentiary hearing.  <u>See</u> Docket No. 23.  Mr. Smith resists

the motion.  <u>See</u> Docket No. 31.

**DISCUSSION**

**A.    Scope and Procedure Applicable to a § 2255 Motion**

Section 2255 of Title 28 of the United States Code was enacted to

supersede habeas corpus practice for federal prisoners.  <u>Davis v. United States</u>,

417 U.S. 333, 343-44 (1974).  Section "2255 was intended to afford federal

prisoners a remedy identical in scope to federal habeas corpus." Id. at 343. Prior to the enactment of § 2255, habeas claims had to be brought in the district where the prisoner was confined, resulting in overburdening those districts where federal correctional institutions were located and presenting logistical issues because the record in the underlying criminal case were often in a distant location. United States v. Hayman, 342 U.S. 205, 212-16 (1952). The enactment of § 2255 resolved these issues by requiring that the motion be filed in the sentencing court. Id.

The scope of a § 2255 motion is seemingly broader than the scope of a habeas petition, the latter of which is typically limited to allegations of a constitutional dimension. Section 2255 allows a federal prisoner to "vacate, set aside or correct" a federal sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." See 28 U.S.C. § 2255.

Where the allegation for relief is *not* based on a violation of a Constitutional or federal statutory right or an assertion that the court was without jurisdiction, the Supreme Court has read a "fundamentality" requirement into § 2255—relief is available for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary

23

demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962); see Peguero v. United States, 526 U.S. 23, 27-30 (1999).

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal. United States v. Frady, 456 U.S. 152, 165-66 (1982); McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001). When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either: (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner. Bousley v. United States, 523 U.S. 614, 621-22 (1998); McNeal, 249 F.3d at 749. Therefore, barring a claim of actual innocence, a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors.

Appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal; such claims are, therefore, properly addressed in a 28 U.S.C. § 2255 motion such as the one here. See United States v. Campbell, 764 F.3d 880, 892-93 (8th Cir. 2014); United States v. Lee, 374 F.3d 637, 654 (8th Cir. 2004) (ineffective assistance of counsel claims are not generally cognizable on direct appeal and will be heard only to prevent a miscarriage of justice or in cases where the district court has developed a record on the issue). Therefore, no procedural default analysis applies to Mr. Smith's claims of constitutionally deficient counsel.

**B.**     **Standard Applicable to Rule 12(b)(6) Motions**

The government's motion to dismiss Mr. Smith's § 2255 motion is based

on Federal Rule of Civil Procedure 12(b)(6).  See Docket No. 23.  The Federal

Rules of Civil Procedure are applicable to § 2255 habeas actions so long as the

procedural rules do not conflict with the habeas statutes or the Rules

Governing Section 2255 Cases in the United States District Courts ("Governing

Rules").  See Governing Rule 12.  Federal Rule of Civil Procedure 12(b)(6) is not

inconsistent with the Governing Rules.  Compare Governing Rules 4 & 5

(allowing respondent to respond to petitioner's habeas petition with a motion),

with FED. R. CIV. P. 12(b)(6) (same); see also Ebert v. Clarke, 320 F. Supp. 2d

902, 909-10 (D. Neb. 2004) (holding that FED. R. CIV. P. 12(b)(6) applies in

habeas proceedings).

Rule 12(b)(6) allows dismissal of a habeas petition if the petitioner has

failed to state a claim upon which relief can be granted.  See FED. R. CIV. P.

12(b)(6).  Petitioners must plead "enough facts to state a claim to relief that is

*plausible* on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)

(emphasis added).

Under Federal Rule of Civil Procedure 8(a)(2), a petitioner must plead

only "a short and plain statement of the claim showing that the pleader is

entitled to relief."  Id. at 555 (quoting FED. R. CIV. P. 8(a)(2)).  A habeas petition

does not need "detailed factual allegations" to survive a motion to dismiss, but

a petitioner must provide the grounds for his entitlement to relief and cannot

merely recite the elements of his cause of action.  Id. at 555 (citing Conley v.

25

<u>Gibson</u>, 355 U.S. 41, 47 (1957) & <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)). There is also a "plausibility standard" which "requires a [petition] with enough factual matter (taken as true)" to support the conclusion that the petitioner has a valid claim. <u>Id.</u> at 556. The petitioner's complaint must contain sufficiently specific factual allegations in order to cross the line between "possibility" and "plausibility" of entitlement to relief. <u>Id.</u>

There are two "working principles" that apply to Rule 12(b)(6) motions. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). First, courts are not required to accept as true legal conclusions "couched as factual allegation[s]" contained in a petition. <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555). Rule 8 "does not unlock the doors of discovery for a [petitioner] armed with nothing more than conclusions." <u>Id.</u> at 678-79.

Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u> at 679 (citing decision below <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157-158 (2d Cir. 2007)). Where the petitioner's allegations are merely conclusory, the court may not infer more than the mere possibility of misconduct, and the petitioner has *alleged*—but has not "show[n]"—that he is entitled to relief as required by Rule 8(a)(2). <u>Iqbal</u>, 556 U.S. at 679 (emphasis added).

The Court explained that a reviewing court should begin by identifying statements in the petition that are conclusory and therefore not entitled to the

26

presumption of truth.  Id. at 679-80.  Legal conclusions must be supported by factual allegations demonstrating the grounds for a petitioner's entitlement to relief.  Id. at 679; Twombly, 550 U.S. at 555; FED. R. CIV. P. 8(a)(2).  A court should assume the truth only of "well-pleaded factual allegations," and then may proceed to determine whether the allegations "plausibly give rise to an entitlement to relief."  Iqbal, 556 U.S. at 679.  These are the principles guiding the court's evaluation of respondent's motion.

Rule 12(b)(6) requires the court to evaluate the sufficiency of a petitioner's pleading of a claim by examining his or her petition.  See FED. R. CIV. P. 12(b)(6); Iqbal, 556 U.S. at 679.  Courts evaluating a Rule 12(b)(6) motion are not strictly limited to evaluating the petition alone, however. Dittmer Props., L.P. v. F.D.I.C., 708 F.3d 1011, 1021 (8th Cir. 2013).  They may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned."  Id. (quoting Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B CHARLES A. WRIGHT & ARTHUR R. MILLER, FED. PRACTICE & PROCEDURE § 1357 (3d ed. 2004))).

When a respondent files a response to a § 2255 action, whether it be an answer or a motion to dismiss, the respondent is directed to attach any transcripts or other records the respondent considers to be relevant and which are not available in the court's records.  See Governing Rule 5(c).  In addition, Rule 4 specifically directs the court to examine the record of prior proceedings

27

in that court.  <u>See</u> Governing Rule 4(b).  The government has filed an affidavit from Mr. Smith's retained counsel, Manuel de Castro, responding to Mr. Smith's allegations of ineffective assistance of counsel.  <u>See</u> Docket No. 11. The court considers this affidavit as well.

Evaluation of the government's motion is based on consideration of the entire record in Mr. Smith's underlying criminal case, counsel's affidavit, and the law.  The court considers these documents in ruling on respondent's Rule 12(b)(6) motion.  <u>Dittmer Props., L.P.</u>, 708 F.3d at 1021; FED. R. EVID. 201(b); Governing Rule 5(c).

## C.    The Standard for Ineffective Assistance Claims

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel.  U.S. Const. amend. VI.  The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' " <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984) (quoting <u>McMann v. Richardson</u>, 397 U.S. 759, 771, n.14 (1970)). <u>Strickland</u> is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction.  <u>Id.</u> at 687.  "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  <u>Id.</u> at 687-88.  The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment.  <u>Id.</u> at 691.  The defendant must show "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  In sum, a defendant must satisfy the following two-prong test.  Id. at 687.

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id.

"There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002) (quotation omitted).  It is the petitioner's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." Id.  Counsel's conduct must be judged by the standards for legal representation which existed at the time of the representation, not by standards promulgated after the representation.  Bobby v. Van Hook, 558 U.S. 4, 7-9 (2009).  American Bar Association standards and similar directives to lawyers are only guides as to what reasonableness of counsel's conduct is; they are not its definitive definition.  Id.  The Supreme Court distinguishes between those cases in which the new evidence "would

barely have altered the sentencing profile presented to the sentencing judge," and those that would have had a reasonable probability of changing the result. Porter v. McCollum, 558 U.S. 30, 41 (2009).

In assessing the prejudice prong, it is important for courts to consider " 'the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding'—and 'reweig[h] it against the evidence in aggravation.' " Id. at 41 (quoting Williams v. Taylor, 529 U.S. 362, 397-98 (2000)). It is not necessary for the petitioner to show "that counsel's deficient conduct more likely than not altered the outcome" of his case, only that there is "a probability sufficient to undermine confidence in [that] outcome." Id. at 44. Judicial scrutiny of attorney performance is highly deferential, with a strong presumption that counsel's conduct falls within the range of reasonable professional conduct. Strickland, 466 U.S. at 698.

## D.    Ground One: Pre-plea Ineffectiveness Claims

Mr. Smith asserts a host of claims of ineffectiveness of counsel which allegedly occurred prior to his plea of guilty. Reading his § 2255 motion together with its accompanying memorandum (Docket No. 2), the court understands Mr. Smith to be making the following pre-plea allegations that his counsel was constitutionally ineffective:

1.    counsel failed to tell Mr. Smith of the "circumstances and consequences" of pleading guilty or of going to trial;

2.    counsel failed to obtain unspecified discovery;

3.    counsel failed to interview and call unnamed and unspecified witnesses;

     4.      counsel failed to tell Mr. Smith he would be subject to a career offender enhancement under the USSG;

     5.      counsel failed to make a suppression motion based on violation of Mr. Smith's Fourth Amendment rights at the traffic stop; and

     6.      counsel failed to have the drugs seized by police independently tested to establish they were powder cocaine, not crack cocaine.

Allegations 1-3 are mere legal conclusion. They include no specific facts from which the court can judge their merit as legal claims. This fails under the test announced in Twombly. Iqbal, 556 U.S. at 679; Twombly, 550 U.S. at 555 (both holding that legal conclusions stated in a pleading do not serve to defeat a Rule 12(b)(6) motion, only assertions of specific facts will do so).

Established habeas case law also holds that vaguely stated claims such as these do not entitle a petitioner to habeas relief. "A habeas corpus petitioner, alleging ineffective assistance of counsel, must show that a particular act or omission fell below the standard acceptable for attorneys in the same or similar circumstances." Beard v. Lockhart, 779 F.2d 23, 26 (8th Cir. 1985) (citing Strickland, 466 U.S. at 693). A general allegation, such as that counsel was not "fighting" the defendant's case properly or failed to "investigate," without more, is insufficient to warrant habeas relief. Id. The court therefore recommends counts 1-3 of Mr. Smith's pre-plea allegations of ineffective assistance be dismissed. Count 1 is further touched on below in the discussion of Mr. Smith's plea of guilty.

Allegations 5[5] and 6 above are impacted by the fact Mr. Smith entered a plea of guilty.  When a § 2255 petitioner has been convicted in his direct criminal proceedings by entering a guilty plea, the scope of issues available to him to be raised in habeas proceedings is curtailed.  As the Supreme Court has stated:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in [McMann v. Richardson, 397 U.S. 759 (1970)].
>
> A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional [issue] he might have to the charge, no matter how peripheral such a plea might be to the normal focus of counsel's inquiry.  And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, . . . it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings.

Tollett v. Henderson, 411 U.S. 258, 267 (1973).

---

[5] Given the wealth of independent evidence the government had amassed against Mr. Smith as detailed in the PSR (CR Docket No. 118, pp. 4-5), Mr. Smith would have great difficulty proving prejudice under Strickland for counsel's failing to attempt suppression of the fruits of the DUI traffic stop. Such a motion, even if successful, would at most only have resulted in suppression of the cocaine found in the trunk of Mr. Smith's car.  It would not have suppressed the evidence from the two drug sources, the text evidence from one source's cell phone, the evidence from the concerned citizen, nor the evidence from the search warrant.

The Supreme Court has explained why a guilty plea cuts off all constitutional claims that predate a plea.  Pleas are necessarily based on imperfect knowledge of the law and facts—one can only know what the result of a full-blown jury trial will be after the trial has been had, and even then, truth is still often in dispute.  McMann, 397 U.S. 769-70.  If a defendant admits his commission of a crime, upon good faith, reasonably competent advice from his counsel, the defendant assumes the risk that his attorney might be wrong about the facts or the outcome of a legal issue.  Id. at 774.

The issue presented in habeas proceedings is not whether—in retrospect--counsel was right or wrong about a certain fact or legal analysis, but rather, whether the defendant's plea was made voluntarily and intelligently and upon advice from his attorney that was "within the range of competence demanded of attorneys in criminal cases."  Id. at 770-71.  Therefore, a defendant who pleaded guilty because of a prior coerced confession that he believed would be used against him at trial is not entitled to an evidentiary hearing in a habeas proceeding without showing other, extenuating circumstances.  Id. at 771.

A voluntary and knowing plea is not transformed into a coerced plea simply because the defendant pleaded guilty to obtain a lesser sentence than the maximum possible penalty that would have been applicable if defendant had been convicted at trial.  Brady v. United States, 397 U.S. 742, 751 (1970); Parker v. North Carolina, 397 U.S. 790, 795 (1970).  Guilty pleas are valid if

the court record affirmatively finds the plea was both voluntary and intelligent. Boykin v. Alabama, 395 U.S. 238, 242 (1969).

A plea is voluntary if it is made by a defendant who is "fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel," and so long as the plea was not induced by threats, misrepresentation, or by promises that are improper, unfulfilled, or unfulfillable. Brady, 397 U.S. at 755.

A plea is intelligently made if the defendant was aware of the nature of the charge against him, and he was mentally competent and in control of his mental faculties. Id. at 756. A plea is not rendered unintelligently made simply because, long after the plea was entered, the defendant realizes his cost-benefit analysis as to whether to go to trial or to plead guilty did not correctly take into account every relevant factor which entered into his decision. Id. at 756-57.

Here, an examination of the transcript of the plea hearing as well as further statements made by Mr. Smith at his sentencing hearing reveals his plea was a constitutionally valid plea. Mr. Smith was told, and he stated under oath that he understood, what the charge was he was pleading to, what the mandatory minimum and maximum sentence was for that charge, what the contents and effects of the § 851 information were. CR Docket No. 132 at pp. 7, 16-18.

Mr. Smith was told and he stated under oath that he understood he had a right to have a jury trial and all the rights that would attend such a trial. Id.

at pp. 9-10.  Mr. Smith was told and he stated under oath that he understood that, if he entered a plea of guilty, he would give up his right to trial and all the accompanying rights.  Id.  Mr. Smith was told and he stated under oath that he understood that, except for the mandatory minimum and maximum, his actual sentence could not be determined at the time he was entering his plea.  Id. at p. 8.  He further was told and stated he understood that the court would not be allowed to sentence him to less than the mandatory minimum sentence.  Id. at pp. 17-18.  He was further informed the court might sentence him more severely than he was anticipating at that time.  Id. at pp. 5, 8.

Furthermore, based on the factual basis statement, Mr. Smith's oral statements at the change of plea hearing, and his later oral statements at his sentencing, Mr. Smith admitted each and every fact necessary to show that he committed the crime of possession of crack cocaine with intent to distribute that drug.  CR Docket Nos. 132 at pp. 12-14, 130 at pp. 3-5.  The court concludes that Mr. Smith's plea was valid.

The plea being knowing, voluntary and intelligent on the record at the change of plea hearing, the court does not inquire into what advisements counsel made off the record as Mr. Smith vaguely alleges in allegation number 1 above.  The fact of the matter is that, regardless of whatever else counsel may have said or omitted saying out of court, the district court itself advised Mr. Smith on the record at his change of plea hearing of the "circumstances and consequences" of pleading guilty.

Because the court has determined Mr. Smith's plea was voluntary, knowing and intelligent, claims 5 and 6 are precluded by that plea. Claim 4, that counsel failed to tell Mr. Smith before he entered a plea of guilty that he would be subject to a USSG enhancement for being a career offender, is also precluded by the plea.

The district court told Mr. Smith explicitly that his final sentencing range under the USSG was uncertain both because the court could not project what range would be calculated in the PSR and because the court could not predict what objections either party might make to the PSR and how the court would rule on those objections. CR Docket No. 132 at p. 8. In addition, the court told Mr. Smith it could depart upward from the USSG range. Id. Thus, Mr. Smith made a knowing and intelligent decision to enter a plea of guilty despite the fact he was advised the USSG range might turn out to be different—and perhaps more severe--than what he and counsel had discussed. Id. at pp. 5, 8.

Furthermore, in earlier *ex parte* filings with the court, Mr. Smith admitted that his first three attorneys had advised him he was facing a potential life sentence because of the crimes charged and his criminal history. See CR Docket No. 71. The record clearly reflects that Mr. Smith was told from multiple sources—the court, the government, and at least three of his lawyers—that he was facing a potential sentence of life imprisonment. These advisements would encompass a career offender status, with or without a specific advisement as to that USSG provision.

36

Mr. Smith emphasizes the fact that the government filed its § 851 information the same day as his change of plea hearing, November 27, 2018. He suggests, without stating outright, that he was unfairly surprised and had no opportunity to discern the effect of this information on his sentence. Again, though, the record belies this. The written plea agreement, which Mr. Smith signed 16 days earlier, included the statement that the government would file an information pursuant to § 851 and even detailed the specific conviction (among many) the government would rely upon for that information. See CR Docket No. 92 at p. 6, ¶ J. So Mr. Smith had knowledge that the government would file an § 851 information and he had knowledge of its contents at least as of November 11, 2018. Id. Remember, Mr. Smith told the district court under oath that he had read and understood the terms of the written plea agreement before he signed it. CR Docket No. 132 at p. 4.

But even if the § 851 information was "sprung" on Mr. Smith on the day of sentencing, his plea to the charge—including the § 851 information—was thoroughly explained to him by the district court at the change of plea hearing. Id. at p. 18. Mr. Smith was advised of the conviction asserted in the information, the effect of the information on his sentence and, that once he admitted having the conviction, he would not be allowed to later attack the conviction. Id. Mr. Smith was also told he need not admit to the conviction that day and, if he did not, a hearing would be held at a later date to determine if the conviction was his. Id. Knowing all of this, Mr. Smith admitted to the conviction in the government's § 851 information. Id.

Nor was Mr. Smith prejudiced. Counsel negotiated a plea agreement that limited Mr. Smith to additional exposure at sentencing for only one of his many prior drug distribution and possession charges. Without the plea agreement, the government would have been free to file a § 851 information alleging many other prior convictions, which would have served to increase Mr. Smith's mandatory minimum sentence up to life. See 21 U.S.C. §§ 841(b)(1)(A), 802(44), and 851.

Mr. Smith also alleges the conviction contained in the § 851 information was not a felony because he only served five months' boot camp for the conviction. The test of whether a crime is a felony is not what punishment is *actually* imposed, but rather what the *maximum* possible penalty is that can be imposed. If the crime is "punishable" by more than one year imprisonment, the crime is a felony, regardless of the actual penalty imposed. See, e.g., 21 U.S.C. § 802(44). In any case, Mr. Smith was *actually* sentenced to four years' imprisonment on the April 18, 2002, conviction, so it clearly was a felony conviction, regardless of how long or where Mr. Smith actually served out his sentence. See CR Docket No. 118 at p. 8, ¶ 32.

One final note. Where a habeas petitioner collaterally attacks his plea by arguing that counsel was ineffective in advising petitioner to plead guilty, the petitioner must show not only that his counsel's performance was deficient, he must also show that he was prejudiced by counsel's substandard advice. Hill, 474 U.S. at 58-59 (quoting Strickland, 466 U.S. 668). In the context of a guilty plea, in order for a habeas petitioner to demonstrate prejudice under

38

<u>Strickland</u>, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59.

Here, Mr. Smith does not assert he would have gone to trial. Instead, the relief he seeks is to be able to "re-plead" to the same charge(s). <u>See</u> Docket No. 2 at p. 18 (Mr. Smith wrote "Smith's conviction and sentence should be vacated so that he can plea anew."). Elsewhere, Mr. Smith states he never intended to go to trial from the very beginning and that is why he gave a statement to police on September 4, 2017, following his DUI arrest. <u>See</u> CR Docket No. 130 at p. 4. By failing to assert he would have gone to trial, Mr. Smith fails to satisfy the <u>Hill</u> standard for showing prejudice as a result of ineffective assistance of counsel in recommending a plea. The court recommends dismissal of ground one and all its subparts of Mr. Smith's § 2255 motion.

## E.    Ground Two:  Post-plea Ineffectiveness Claims

Again, reading Mr. Smith's § 2255 motion together with his accompanying memorandum, the court understands Mr. Smith to allege the following post-plea allegations:

--counsel failed to review, discuss and explain the PSR to him;

--counsel failed to file substantive objections to the PSR; and

--counsel failed to properly argue objections to the PSR.

Mr. Smith's current allegation that his lawyer never went over the PSR with him is belied by the record at the sentencing hearing. <u>See</u> CR Docket No. 130 at p. 2. It is further belied by counsel's affidavit filed in this matter

39

wherein he indicates he met at least twice with Mr. Smith, once to go over the draft PSR and a second time for over two hours to discuss the final PSR the Friday before sentencing.  See Docket No. 11.

The main contention Mr. Smith raises in connection with the PSR is that he claims he did not know the career offender USSG provision would apply to him.  See Docket No. 2 at p. 33.  This allegation is undermined by Mr. Smith when he also states both he and his lawyer "knew Smith would be deemed as a career offender."  Id.  If Mr. Smith knew he would be considered a career offender, then how was he prejudiced by a PSR that contained exactly the same conclusion?

But, in addition, as discussed above the district court told Mr. Smith he was facing up to life imprisonment, and at least three of his lawyers told him the same.  Application of the career offender provision resulted in a USSG range in Mr. Smith's case of 262 months to 327 months' imprisonment, which is less than life imprisonment.  Mr. Smith fails to explain how he was prejudiced even if his allegations are true.  He went into the change of plea hearing expecting a maximum of life imprisonment; he went into the sentencing hearing expecting the same.  His USSG range, *with* the application of the career offender provision, was less than life.  The court recommends dismissing Mr. Smith's claim that his lawyer was ineffective for failing to review and discuss the PSR with him.

Mr. Smith alleges he told counsel he wanted to withdraw his plea after seeing the PSR.  The court notes this assertion also belies Mr. Smith's

40

assertion above that he never saw the PSR. Obviously, how could the PSR prompt Mr. Smith to want to withdraw his plea if he never saw the PSR?

Counsel agrees that Mr. Smith did initially request to withdraw his plea after seeing the PSR. See Docket No. 11. Counsel states he had a lengthy discussion with Mr. Smith after researching the issue. Id. Counsel felt Mr. Smith's chances of being allowed to withdraw his plea were not good and, by making such a motion, he would further jeopardize his chances of receiving credit for accepting responsibility for his actions under the USSG calculation. Id.

Counsel advised Mr. Smith, as a matter of strategy for obtaining the lowest sentence possible, to withdraw all objections to the PSR except the objection concerning acceptance of responsibility and to not ask to withdraw his plea. Id. After receiving this advice, Mr. Smith agreed with counsel's strategy. Id. Matters of sound trial strategy—which counsel's advice in this case was, reducing substantially Mr. Smith's possible sentencing exposure— are virtually unassailable under Strickland.

The same conclusion results when one examines Mr. Smith's claim as to the objections to the PSR. Counsel agrees in his affidavit filed herein that he did not argue any of the objections at the sentencing hearing except the one regarding acceptance of responsibility. See Exhibit 11. Counsel explains that this was a matter of strategy for the sentencing hearing to which Mr. Smith had previously agreed. Id. Counsel was correct in this instance and provided good advice to Mr. Smith in this regard.

41

The factual objections asserted in counsel's original written objections to the PSR were completely inconsistent with acceptance of responsibility. As detailed previously, those written objections disavowed all of the factual allegations Mr. Smith had previously admitted to at his change of plea hearing. Mr. Smith could not both deny the facts necessary to sustain his plea and at the same time argue he should be accorded a reduction under the USSG for accepting responsibility. At the sentencing hearing, Mr. Smith needed to embrace one or the other, but not both sets of objections.

Counsel's thin argument in his written objections that Mr. Smith should still get credit for accepting responsibility because he acknowledged the cocaine found in the trunk of his vehicle was his would not have supported the USSG reduction. Undoubtedly, that is why he advised Mr. Smith to jettison the factual objections and to embrace the sole objection seeking credit for accepting responsibility.

Here is why. Mr. Smith was never charged by the government with the (powder) cocaine found in the trunk of his vehicle. As detailed in the PSR, Mr. Smith was found to be in possession of a wide array of drugs: powder cocaine in his trunk and in Ms. Mitchell's house, crack cocaine, heroin, and ecstasy. He was also a felon who possessed at least five firearms, in violation of 18 U.S.C. § 922(g)(1). The government could have charged Mr. Smith with separate counts for all of these items. It did not.

The government chose to charge him with two crimes: conspiracy to distribute heroin and possession with intent to distribute crack cocaine. See

42

CR Docket No. 1.  The parties reached a plea agreement whereby Mr. Smith agreed to plead guilty to possession with intent to distribute crack cocaine, not powder cocaine, nor ecstasy or any other drug.  It is unavailing in terms of acceptance of responsibility for Mr. Smith to say he admits to possessing other, uncharged drugs, but not the drugs for which he stands to account in this case.  In order to earn acceptance of responsibility, Mr. Smith had to embrace ownership and intent to distribute the crack cocaine charged in the indictment, not some other drug.  The fact that he ultimately did, both at the change of plea and at the sentencing hearings, secured a lower sentence for him.

Where an objection to a PSR, if it had been made and sustained, yields the same potential sentence under the USSG, a petitioner under § 2255 cannot establish Strickland prejudice as a matter of law based on the petitioner's lawyer's failure to lodge the objection.  See Montanye v. United States, 77 F.3d 226, 230-31 (8th Cir. 1996) (where the petitioner was sentenced to 360 months' incarceration, and the Guidelines range was 360 months to life under the PSR as written, but also the same range if the objection had been made and sustained, petitioner could not show prejudice).  Cf. Sun Bear v. United States, 644 F.3d 700, 705 (8th Cir. 2011) (movant cannot state a claim under § 2255 attacking district court's sentence where the sentence was within statutory limits and the same sentence could have been imposed even if the movant were granted the § 2255 relief he requests).

However, where counsel failed to make objections to a PSR and it cannot be determined as a matter of law that those objections would not have affected

43

the petitioner's sentence, a question of fact is created which necessitates an

evidentiary hearing.  See West v. United States, 994 F.2d 510, 513 (8th Cir.

1993) (evidentiary hearing required on petitioner's § 2255 motion where

petitioner alleged ineffective assistance of counsel for failure to object to PSR

and it could not be conclusively determined from the record that the objections

would have had no effect on the petitioner's sentence); United States v. Ford,

918 F.2d 1343, 1350 (8th Cir. 1990) (holding that defendant in direct appeal

established ineffective assistance of counsel where counsel failed to object to

the fact that the PSR did not give him credit for acceptance of responsibility

and, had defendant received such credit, his sentencing range under the

Guidelines would have been different).[6]

    Here, as explained above, counsel could not have maintained both sets of

objections made in his written pleading as they were inconsistent with each

other.  He must either choose the factual objections, with one result that the

plea would be invalidated and Mr. Smith would have had to face (1) trial on

both counts of the indictment and (2) a different § 851 information that could

have included enough prior convictions to trigger a mandatory minimum

---

[6]The court recognizes that Montanye, West, and Ford all pre-date the Court's
decision in Booker, which made the USSG advisory only.  See United States v.
Booker, 543 U.S. 220, 245 (2005).  However, even though the USSG are now
only advisory, the sentencing court is still required to calculate a defendant's
sentencing range under the USSG and give serious consideration to the USSG
range before analyzing the factors under 18 U.S.C. § 3553.  Gall v. United
States, 552 U.S. 38, 47, 50 (2007).  Hence, this court concludes that the
Montanye, West, and Ford cases remain viable precedent for collateral
proceedings in a post-Booker world.

sentence of life imprisonment.  Or, a more likely result of persisting with the factual objections is the government would have called witnesses and conducted a mini-trial at sentencing that would have drawn on the government's considerable evidence against Mr. Smith and defeated the objections.  Then the district court would have overruled all Mr. Smith's objections, denied him credit for acceptance of responsibility, and his USSG range would have been 360 months to life imprisonment (37 total offense level plus criminal history category VI).

Far from being able to prove counsel's jettisoning of the factual objections harmed him, examination of the USSG and the facts leads to the inescapable conclusion counsel's actions in failing to argue those objections shaved 98 months off Mr. Smith's sentence.  Mr. Smith has failed to carry his burden to show that failure to assert the original objections at sentencing prejudiced him because he cannot show he would have received a lower sentence had counsel done so.  Montanye, 77 F.3d at 230-31; Sun Bear, 644 F.3d at 705.

Contained within Mr. Smith's pleadings is the argument that counsel should have objected at sentencing to his April 18, 2002, Illinois conviction under Mathis v. United States, 579 U.S. ___, 136 S. Ct. 2243 (2016).  In a nutshell, Mathis held that certain state court convictions cannot be used to enhance a federal sentence if the statute of conviction in state court criminalizes conduct that is broader than what the comparable federal statute criminalizes.  Id. at 2248-54.  Mr. Smith argues his Illinois conviction is based

45

on a state law that is broader than federal law and, therefore, cannot constitute a predicate conviction for purposes of a § 851 information.  See Docket No. 2 at pp. 25-27.

But, as the government correctly points out, the § 851 information in Mr. Smith's case did not affect his sentence.  The filing of the § 851 information ensured Mr. Smith could not be sentenced below the mandatory minimum of 240 months' imprisonment.  However, Mr. Smith's USSG range was 262 months' imprisonment at the very bottom of the range—22 months higher than the mandatory minimum sentence triggered by the § 851 information. Mr. Smith's USSG range would have been the same with or without the § 851 information.  Therefore, had counsel challenged the conviction used by the government in the § 851 information, it would not have impacted Mr. Smith's sentence at all.  He would still have been subject to a USSG range of 262 to 327 months.  See CR Docket No. 130 at p. 6.  Mr. Smith cannot show prejudice because of counsel's alleged deficiency in failing to attack the conviction alleged in the § 851 information.

In summary, Mr. Smith's bare assertion that he did not review the PSR before sentencing should be dismissed because it is belied by the record in his underlying criminal case and because his assertion is contradicted by his own pleadings in this § 2255 motion.  Mr. Smith's assertion that counsel should have continued to assert and argue the factual objections to the PSR fails because he cannot show that counsel's failure to do so resulted in a longer sentence.  And, finally, Mr. Smith cannot show prejudice for counsel's failure to

46

attack the conviction used by the government in its § 851 information by asserting a claim under <u>Mathis</u>.  For all these reasons, the court recommends that ground two of Mr. Smith's § 2255 petition together with all subparts be dismissed.

## F.    No Evidentiary Hearing is Warranted

"While '[a] petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that [he] is entitled to no relief,' no hearing is required 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.' " <u>New v. United States</u>, 652 F.3d 949, 954 (8th Cir. 2011) (quoting <u>Anjulo-Lopez v. United States</u>, 541 F.3d 814, 817 (8th Cir. 2008)).

"A district court may deny an evidentiary hearing where (1) accepting the petitioner's allegations as true, the petitioner is not entitled to relief, or (2) 'the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.' " <u>Guzman-Ortiz v. United States</u>, 849 F.3d 708, 715 (8th Cir. 2017) (quoting <u>United States v. Sellner</u>, 773 F.3d 927, 929-30 (8th Cir. 2014)).

The Eighth Circuit held no evidentiary hearing was necessary in <u>Guzman-Ortiz</u> because Guzman-Ortiz mischaracterized the record in his challenges to his lawyer's representation during closing argument and sentencing.  <u>Id.</u>  Therefore, "no further factual development of his claims was necessary" before denying those claims.  <u>Id.</u>

The district court's denial of an evidentiary hearing in <u>Adams v. United States</u>, 869 F.3d 633, 635-36 (8th Cir. 2017), was affirmed.  Adams claimed his lawyer just told him to answer all the district court's questions at the plea hearing "yes."  <u>Id.</u> at 634.  Adams also claimed he did not understand the plea documents or the plea proceeding, his lawyer never explained them to him, he only signed the documents because his lawyer told him to, and his lawyer blindly urged him to plead guilty.  <u>Id.</u>  Adams' lawyers submitted affidavits that were congruent with the record, but were not consistent with Adams' affidavit submitted in his § 2255 motion.  <u>Id.</u>  The district court denied the § 2255 motion without a hearing.  <u>Id.</u>

The Eighth Circuit said Adams' contention that his lawyer said to answer all the judge's questions "yes" was belied by the transcript of the plea hearing where he answered multiple questions "no."  <u>Id.</u> at 634-35.  Because Adams chose between "yes" and "no" answers when answering the court's questions, the court was permitted to hold Adams to his sworn testimony at the plea hearing that he had read the plea documents, that they were accurate, that he had discussed them with counsel, and that he understood them.  <u>Id.</u> at 635-36.  Thus, it was not an abuse of discretion to deny Adams an evidentiary hearing.  <u>Id.</u>

The same conclusion applies equally in Mr. Smith's case.  His allegations in his § 2255 motion are either too conclusory to warrant relief, or they are precluded by his constitutionally valid plea, or he has failed to demonstrate prejudice.  There are few conflicts between his allegations and his counsel's

responses thereto. Where such conflicts exist, Mr. Smith's allegations are internally inconsistent, "contradicted by the record, inherently incredible, or conclusions rather than statements of fact.' " Guzman-Ortiz, 849 F.3d at 715. Therefore, the court recommends no evidentiary hearing be held.

## CONCLUSION

Based on the foregoing facts, law and analysis, this magistrate judge respectfully recommends granting the government's motion to dismiss [Docket No. 23] without holding an evidentiary hearing.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED October 1, 2020.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge